**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| KENNETH DAVID MELTON and MARY ELIZABETH MELTON, Individually, and as Administrators of the Estate of JENNIFER BROOKE MELTON, deceased,<br><br>Plaintiffs,<br><br>vs.<br><br>GENERAL MOTORS LLC and THORNTON CHEVROLET, INC.,<br><br>Defendants. | Civil Action No:<br><br>**NOTICE OF REMOVAL** |

## <u>NOTICE OF REMOVAL</u>

Defendant General Motors LLC ("New GM") removes this action from the State Court of Cobb County, Georgia, to the United States District Court for the Northern District of Georgia, Atlanta Division, pursuant to 28 U.S.C. §§ 1332, 1441, and 1446, based on the following facts:

## BACKGROUND

### I.   Plaintiffs' Allegations.

1.      New GM[1] is a named defendant in a civil action pending in the State Court of Cobb County, Georgia, styled as *Kenneth David Melton and Mary Elizabeth Melton, Individually, and as Administrators of the Estate of Jennifer Brooke Melton, Deceased, Plaintiffs v. General Motors LLC and Thornton Chevrolet, Inc., Defendants*, No. 14A1197-4.

2.      Plaintiffs first brought suit against New GM and Thornton Chevrolet, Inc. (the "Thornton dealership") in June 2011, claiming damages arising from a 2010 fatal car accident involving Brooke Melton.  (Compl. ¶ 146.)  Plaintiffs settled that suit with respect to New GM on September 9, 2013.  (*Id.*)  Plaintiffs proceeded with their claims against the Thornton dealership and trial was set for June 9, 2014.  On May 9, 2014, however, plaintiffs voluntarily dismissed their claims against Thornton in the original suit.   (5/9/14 Notice of Voluntary Dismissal, attached hereto as Ex. 1.)

---

[1] In June 2009, New GM was a newly formed entity, created by the U.S. Treasury, to purchase substantially all of the assets of Motors Liquidation Company, formerly known as General Motors Corporation ("Old GM").

3.     On May 12, 2014, only three days after voluntarily dismissing the Thornton dealership, plaintiffs brought this action against New GM and against Thornton.  Plaintiffs bring two sets of claims against New GM.  *First,* plaintiffs purport to seek rescission of their September 9, 2013 Settlement Agreement with New GM. (Compl. ¶¶ 129, 146.)   Plaintiffs' rescission claim is based on allegations that New GM concealed evidence from plaintiffs during the first lawsuit and that a New GM employee allegedly provided false testimony during his deposition in that case.  (*Id.* ¶ 147.)  *Second*, plaintiffs claim that New GM "designed, selected, inspected, tested, manufactured, assembled, equipped, marketed, distributed, and sold" to them a Chevrolet Cobalt that was "not crashworthy, is defective, and is unreasonably dangerous and unsafe for foreseeable users."  (*Id*. ¶¶ 150-54.)  Plaintiffs contend there was a "low torque detent in the ignition switch which allows the key to be inadvertently turned from the run to accessory/off position."  (*Id*. ¶ 16.)  Plaintiffs further allege that New GM concealed the alleged defect from its dealers, customers, and others with the intention of "induc[ing] NHTSA not to [issue a nationwide] recall."  (*Id*. ¶¶ 163, 166.)

4.     Plaintiffs also purport to assert a negligence claim against the Thornton dealership.  (*Id*. ¶ 176.)  Plaintiffs allege that Thornton was negligent "in

failing to properly diagnose the source of the Chevrolet Cobalt's engine shutting off, as well as its decision to return the Cobalt to Brooke without having diagnosed and fixed the problem."  (*Id*. ¶ 176.)

## II.    The JPML Proceedings.

5.    This action is one of at least 91 actions (the "Ignition Switch Actions") filed in federal court since February 2014 that include factual allegations involving allegedly defective ignition switches.  The Ignition Switch Actions have been filed in at least 32 federal district courts across the country, including in Alabama, Arizona, Arkansas, California, Colorado (dismissed), the District of Columbia, Florida, Georgia, Illinois, Indiana, Kentucky, Louisiana, Massachusetts, Michigan, Mississippi, Missouri, New Jersey, New York, Ohio, Oklahoma, Pennsylvania, and Texas.

6.    On March 25, 2014, the the JPML established MDL 2543, *In re General Motors LLC Ignition Switch Litigation*.  Subsequently, on June 9, 2014, the JPML designated the United States District Court for the Southern District of New York as the MDL court and assigned to the Honorable Jesse M. Furman to conduct coordinated or consolidated proceedings in the Ignition Switch Actions. (*In re General Motors LLC Ignition Switch Litigation*, MDL No. 2543, ECF No. 266 (J.P.M.L. June 9, 2014) attached hereto as Ex. 2.)  The JPML transferred an

initial group of fifteen actions pending in six federal districts to the Southern District of New York after concluding that it was "undisputed" that cases alleging a defect in the vehicle ignition switch of certain New GM vehicles satisfied the requirements for coordinated or consolidated pretrial proceedings under 28 U.S.C. § 1407.  (*Id.* at 2.)  In addition to the fifteen cases that already have been transferred, the JPML "has been notified of 74 related actions pending in 31 district courts.  These and any other related actions are potential tag-along actions." (*Id.* at 1, n.1.)  Because there were no personal injury actions before the JPML in the initial group of fifteen cases subject to transfer, the JPML did "not determine at this time whether their inclusion in centralized proceedings with the economic loss actions is appropriate.  Any arguments regarding the inclusion of personal injury actions in centralized proceedings will be considered if and when the actions are placed on a conditional transfer order."  (*Id.* at 2, n.3.)

        7.      Concurrently with the filing of this removal petition, as soon as this case is assigned a docket number, New GM will give notice to the JPML of this case as a tag-along action pursuant to Panel Rule 7.1.  Because it arises from the same ignition switch issues alleged in the other Ignition Switch Actions, this case

is appropriate for MDL transfer and consolidation with the other Ignition Switch

Actions pending in the Southern District of New York.  *See* 28 U.S.C. § 1407(a). [2]

## DIVERSITY JURISDICTION

**I.      Parties to the Action.**

8.      The claims filed by plaintiffs against New GM set forth a controversy

between citizens of different states:

> a. At the time of her death, Brooke Melton was a resident and citizen
>
> of the state of Georgia.  (Compl. ¶ 6.)  Plaintiffs Kenneth David
>
> and Mary Elizabeth Melton, as Administrators of the estate of
>
> Jennifer Brooke Melton, are deemed to be citizens of the same
>
> state as the decedent.  28 U.S.C. § 1332(c).

---

[2] Notwithstanding the JPML's reservation of this issue because there were no personal injury actions before it, there is substantial precedent for consolidation and coordination of economic loss and personal injury actions that share common questions of fact in a single MDL.  *See, e.g., In re: Toyota Motor Corp. Unintended Acceleration Marketing, Sales Practices, Products Liability Litig.*, 704 F. Supp. 2d 1379, 1381 (J.P.M.L. 2010) ( "the personal injury and wrongful death cases" can be consolidated with "the economic damage"); *In re: Oil Spill by the Oil Rig Deepwater Horizon in the Gulf of Mexico, on April 20, 2010*, 731 F. Supp. 2d 1352, 1354-55 (J.P.M.L. 2010) ("We also conclude that it makes sense to include the personal injury/wrongful death actions"); *In re: Zicam Cold Remedy Marketing and Sales Practices Litig.*, 655 F. Supp. 2d 1371, 1372-73 (J.P.M.L. 2009) ("We also decline to separate purported consumer class actions from other actions alleging only personal injury.").

b. Defendant General Motors LLC is not a citizen of Georgia. General Motors LLC is (and was at the time this lawsuit was filed) a Delaware limited liability company with its principal place of business in Michigan. (*Id*. ¶ 7.) General Motors LLC is 100 percent owned by General Motors Holdings LLC, which is also a Delaware limited liability company with its principal place of business in Michigan. General Motors Holdings LLC in turn is 100 percent owned by Defendant General Motors Company, which is (and was at the time this lawsuit was filed) a publicly-traded Delaware corporation with its principal place of business in Michigan.

c. The Thornton dealership is a citizen of Georgia, was fraudulently misjoined and should not be considered for purposes of establishing diversity jurisdiction, as further discussed below.

## II.     The Thornton Dealership Is Fraudulently Misjoined.

9.     Under the legal doctrine of fraudulent misjoinder, plaintiffs' separate and unrelated negligent repair claim against the non-diverse Thornton dealership must be severed, such that complete diversity is restored and New GM's right to a federal forum is preserved. The Eleventh Circuit first recognized fraudulent

misjoinder in *Tapscott v. MS Dealer Service Corp.*, 77 F.3d 1353 (11th Cir. 1996), *abrogated on other grounds by Cohen v. Office Depot, Inc.,* 204 F.3d 1069 (11th Cir. 2000).   In *Tapscott*, plaintiffs first filed suit against several automobile dealerships alleging improprieties regarding the sale of automobile service contracts.  *Id.* at 1355.  Subsequently, plaintiffs amended their complaint to add additional claims against several retail product sellers.  *Id.*  Together, the two sets of claims destroyed complete diversity.  The Eleventh Circuit affirmed the district court's order to sever the two classes and deny remand, finding that the two sets of claims contained "no allegation of joint liability or any allegation of conspiracy.  Further, the alleged transactions involved in the [two sets of claims] are wholly distinct . . . ."  *Id.* at 1360.  Accordingly, the Eleventh Circuit held that a "defendant's right of removal cannot be defeated by a fraudulent joinder of a resident defendant having no real connection with the controversy." *Id.* (quotations omitted); *see also* Fed. R. Civ. P. 21 ("On motion or on its own, the court may at any time, on just terms, add or drop a party.  The court may also sever any claim against a party.").

       10.    Since *Tapscott*, federal courts repeatedly have held that the misjoinder of independent claims cannot defeat a defendant's right to a federal forum.  *See, e.g., Willingham v. State Farm Ins. Co.*, CIVA 2:09-CV-59-SA-SAA, 2009 WL

2767679, at *4 (N.D. Miss. Aug. 27, 2009) (fraudulent misjoinder exists where case "involves 'separate allegations of wrongdoing occurring at separate times' . . . . While both claims arguably 'arose' from the [same accident], they involve two separate contracts and implicate distinctly different factual and legal issues."); *Sutton v. Davol, Inc.*, 251 F.R.D. 500, 505 (E.D. Cal. 2008) (severing and remanding negligence claims against non-diverse medical providers after finding fraudulent misjoinder "so as to preserve the removing [product manufacturer] Defendants' right to removal in the remaining multidistrict action"); *Milliet v. Liberty Mut. Ins. Co.*, No. 07-7443, 2008 WL 147821, at *3 (E.D. La. Jan. 11, 2008) (claims against insurers for hurricane damage and claims against contractors performing post-hurricane repairs were only tangentially related and thus "egregiously" misjoined); *In re Guidant Corp. Implantable Defibrillators Prods. Liab. Litig.*, No. 07-1487, 2007 WL 2572048, at *3 (D. Minn. Aug. 30, 2007) (court severed misjoined negligence action against doctor to preserve a product manufacturers' right to removal in the remaining products liability action); *see also, In re Prempro Prods. Liab. Litig.*, 417 F. Supp. 2d 1058, 1059 (E.D. Ark. 2006) ("MDL courts have repeatedly held that misjoined plaintiffs will not defeat diversity and 'the remedy is severing the claims' of the non-diverse plaintiffs and defendants.").

11.     In *Pena v. McArthur*, plaintiff was involved in an automobile accident with an uninsured motorist.   889 F. Supp. 403, 404 (E.D. Cal. 1994).   Plaintiff claimed she was induced (in bad faith) by her insurance company to enter into a settlement agreement that ultimately paid her less than the amount to which she was entitled under her insurance policy.   *Id.*   Plaintiff sought rescission of the agreement with the insurance company, and also sued to recover for negligence against the uninsured driver.   *Id.*   The defendant insurer removed the case to federal court and asked that the negligence claim be severed against the driver, arguing that the requirements for Rule 20 joinder had not been met.   *Id.* at 405. The district court agreed, holding that "there were two occurrences or transactions – the automobile accident between plaintiff and [the other driver] and the alleged breach of fiduciary duty by [the insurer] . . . [t]hese are two distinct torts (negligence and bad faith claim) committed by different defendants at different times, and they resulted in the invasion of separate legal interests.   Additionally, there is no allegation that . . . defendants acted in concert. . . ."   *Id.* at 406.   The court also held that the mere fact that the rescission claim "will require analysis of the underlying negligence claim" was insufficient to support joinder of the two claims.   *Id.*   The "focus of the [insurer claim] is the conduct of State Farm when it presented the [agreement to plaintiff].   Relevant facts will include . . . [what] State

Farm knew or should have known about – not the actual negligence of the other driver . . .   Although *some* similar factual issues may exist between the claims . . . [they] present[] different factual and legal issues; Rule 20 does not contemplate such a joinder." *Id.*

12.    The *Pena* court's analysis and division of the rescission claim against the first defendant (insurer) from the negligence claim against the second defendant (driver) applies to the same type of misjoinder in this case.  Plaintiffs' settlement rescission claim is unrelated to, and wholly separate and distinct from, the facts and law underlying their negligence claim against the Thornton dealership.  Although the claims against both defendants relate to the same vehicle and ignition switch, the application of facts to law concerning whether New GM's binding 2013 settlement with plaintiffs should be enforced is completely distinct from the application of facts to law related to an allegedly negligent vehicle repair performed by the Thornton dealership several years earlier in 2010.  (*See* Compl. ¶¶ 172-76.)

13.    Similarly, plaintiffs' product defect allegations arising from the allegedly faulty ignition switch installed in their 2005 Chevrolet Cobalt are separate and distinct from plaintiffs' claims that the Thornton dealership negligently repaired that vehicle in 2010.  (Compl. ¶¶ 150-54.)  The JPML and

other federal district courts nationwide repeatedly have held that product defect claims against a manufacturer do not share common questions of fact with negligence claims against another defendant whom plaintiffs later engaged to remedy the alleged product defect.

14.     For example, in *In re Baxter Heparin Litigation*, plaintiffs sued Baxter in various courts around the country, alleging that Baxter sold defective lots of its blood-thinning medication, Heparin.  Plaintiffs attempted to join local physicians and medical-care providers as defendants, alleging a variety of negligence theories that largely amounted to the medical-care providers' alleged failure to recognize, repair, remedy, or otherwise alleviate the product defects when plaintiffs came in for treatment.  The JPML, the MDL transferee court, and other federal district courts presiding in *Heparin* cases repeatedly held that negligence claims against the non-diverse medical providers did not share common questions of fact with claims against Baxter, the product manufacturer, and severed the plaintiffs' negligence claims against the non-diverse defendants.  *See, e.g., Gonzales v. Lucille Packard Children's Hosp.*, Case No 5:09-cv-05539 (N.D. Cal. Apr. 2, 2010); *Jolly v. Baxter Healthcare Corp.*, Case No. 9:09-cv-00038 (E.D. Tex. Apr. 16, 2009); *Lucas v. Springhill Hosps., Inc.*, MDL No. 1953 (J.P.M.L. Feb. 10, 2009) (finding that negligence claims "do not share sufficient questions of fact

with claims against Baxter and affiliated entities relating to the manufacture and sale of adulterated Heparin to warrant inclusion of the former in MDL No. 1953"); *Skamangas v. Valleycare Health Sys.*, MDL No. 1953 (J.P.M.L May 22, 2009) (same); *Berry v. Baxter Int'l Inc.*, MDL No. 1953 (J.P.M.L. May 22, 2009) (same); *Phillips v. Hospira Worldwide, Inc.*, MDL No. 1953 (J.P.M.L. May 22, 2009); *Godfrey v. Mobile Infirmary Med. Ctr.*, MDL No. 1953 (J.P.M.L. May 22, 2009) (same) (orders attached hereto as Ex. 3). So too here, plaintiffs' negligence claim against the Thornton dealership is entirely separate from, and unrelated to, any product defect claim against New GM.

15.    Indeed, plaintiffs' negligence claim against the dealership in this case is specifically calculated to defeat diversity and New GM's right to a federal forum. The bulk of plaintiffs' allegations are directed at New GM, with only a brief mention of Thornton. (Compare Compl. ¶¶ 12-140 naming New GM to ¶¶ 141-45 naming the Thornton dealership). Moreover, the few allegations that are aimed at the dealership are fundamentally incompatible with plaintiffs' claims against New GM. Specifically, plaintiffs allege that New GM actively and fraudulently concealed the purported ignition switch defect, even from its dealers. (*Id.* ¶ 36 (New GM "sent affirmative representations to dealers that did not accurately describe the nature of the problem, the multiple design steps needed for

a 'sure solution' to the problem, and GM's knowledge of it."); *id.* ¶ 37 (New GM "offered even its own dealers only an incomplete, incorrect, and insufficient description of the defects and the manner in which to actually remedy them.").) Plaintiffs' claim against Thornton, in contrast, alleges that the dealership was negligent in failing to heed information about the defect purportedly provided by GM.  (*Id.* ¶ 173 (Thornton was negligent because it "was, or should have been, aware of the TSB which applied to Brooke's vehicle.  Thornton, however, did not perform the work pursuant to the TSB."))   The claims, therefore, are not only factually and legally distinct, but logically inconsistent.[3]

---

[3] New GM recognizes that some federal courts in this Circuit, in other circumstances not analogous to this case, have rejected removal petitions premised on fraudulent misjoinder claims. *See, e.g., Triggs v. John Crump Toyota, Inc.,* 154 F.3d 1284, 1287 (11th Cir. 1998) (no fraudulent misjoinder of fraud claims against dealership and financing company arising from vehicle leases where the two defendants were "working in concert."); *Campbell v. Quixtar, Inc.,* 2:08-CV-0045-RWS, 2008 WL 2477454, at *7 (N.D. Ga. June 16, 2008) (plaintiffs' claims not fraudulently misjoined where plaintiffs had "identical contracts with [defendant and] . . . [t]hey were all a part of a unique, complex, and interconnected multi-level marketing relationship with Quixtar."). But unlike those circumstances, this case and its facts are different, making removal and severance proper under *Tapscott*.  In fact, the removal in this case is indistinguishable from the removal in the *Baxter* and *Pena* cases discussed above. *See supra* at ¶¶ 11-14.  Thus, the citizenship of the fraudulently misjoined Thornton dealership should be ignored here—particularly given the fundamental and irreconcilable inconsistency between plaintiffs' allegations against New GM on the one hand (*i.e.*, rescission and product liability due to concealment of the alleged defect, both from consumers and dealers), and plaintiffs' claim against

16.     Moreover, having settled their original suit against New GM, plaintiffs were prepared to proceed to trial this month solely against the Thornton dealership on their remaining claim but voluntarily dismissed Thornton on May 9, 2014.  (Ex. 1.)  Plaintiffs offer no explanation for spontaneously dismissing their claim against the dealership in that case—pending in a different forum, and refiling it here *three days later* on May 12, 2014—other than for the sole purpose of defeating diversity jurisdiction and attempting to prevent removal.  "The removal process was created by Congress to protect defendants.  Congress 'did not extend such protection with one hand, and with the other give plaintiffs a bag of tricks to overcome it.'"  *Legg v. Wyeth*, 428 F.3d 1317, 1325 (11th Cir. 2005); *see also id.* at 1320 (finding "([a] common strategy employed by the plaintiffs in these cases is to name local parties . . . as defendants, thus defeating [the manufacturer's] right to remove a case to federal court." (citation omitted)).

17.     Lastly, and significantly, it should be pointed out and consideration should be given to the fact that these same plaintiffs' lawyers filed a substantively similar personal injury suit in federal court, *Van Pelt v. General Motors LLC*, 1:14-cv-01081-RWS (N.D. Ga. Apr. 11, 2014).  In *Van Pelt,* plaintiffs themselves chose

the Thornton dealership on the other (*i.e.*, that Thornton "was, or should have been, aware" of the defect in plaintiffs' vehicle (Compl. ¶ 173.)).

a federal forum to litigate the same purported substantive conduct by New GM at issue here, invoking federal jurisdiction by pleading a claim under the federal RICO statute.[4]   That the same counsel would bring a substantively similar case here, this time foregoing a RICO claim while impleading a local dealership, strongly suggests that plaintiffs' counsel are engaged in a forum-shopping exercise, intentionally pleading a federal case in *Van Pelt*, while attempting to plead around New GM's right to a federal forum here.[5]   *See, e.g., Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 397 n.2 (1981) ("[C]ourts will not permit plaintiff to use artful pleading to close off defendant's right to a federal forum.") (quotations omitted).   Removal under these circumstances serves the policies recognized by other district courts in the Eleventh Circuit to "discourage[] disingenuous pleading

---

[4] On June 4, 2014, New GM moved to dismiss the RICO count in *Van Pelt* based on assorted pleading defects. (1:14-cv-01081-RWS, ECF No. 15.) On June 9, 2014, counsel for Van Pelt notified New GM that they intend to voluntarily dismiss the RICO count.

[5] Indeed, on April 11, 2014, counsel for the Meltons wrote to New GM, demanding rescission of the Settlement Agreement and attaching a draft complaint. (*See* Letter from L. Cooper to P. Holladay, 4/11/14, attached hereto as Ex. 4). That draft complaint, attached hereto as Ex. 5, is substantially similar in all respects to the as-filed version *except* it contains express RICO allegations, just as the *Van Pelt* complaint does. (Compl. Ex. 5, ¶¶ 1, 4, 169-210.) The deletion of the RICO count from the final *Melton* complaint can only be explained by plaintiffs' desire to avoid federal question jurisdiction, thereby depriving New GM of that basis for removal.

by plaintiffs in state court to avoid removal, . . . [and to] discourage[] game-playing by plaintiffs willing to hide their true intentions and knowledge behind artful pleading." *Sudduth v. Equitable Life Assurance Soc'y,* No. 07-0436-WS-C, 2007 WL 2460758, at *2 (S.D. Ala. Aug. 27, 2007) (internal quotation omitted).

18.     In sum, whatever the ultimate merits of plaintiffs' allegations against New GM with respect to settlement rescission and product defect, they have no connection—in fact or law—to plaintiffs' claims against the Thornton dealership. As in *Tapscott*, there is "no allegation of joint liability or any allegation of conspiracy," nor could there be.  77 F.3d at 1360.  Although both sets of claims relate to the same vehicle, plaintiffs' claims against New GM with respect to rescission of the Settlement Agreement (entered into in 2013) and purported sale of a defective vehicle (in 2005) are "wholly distinct" from plaintiffs' claims against the Thornton dealership with respect to an alleged negligent repair (in 2010).  *Id.* As such, "[New GM's] right of removal cannot be defeated by a fraudulent joinder of a resident defendant having no real connection with the controversy."  *Id.* (quotations omitted).  The Thornton dealership is fraudulently misjoined in this matter and should be severed.  Fed. R. Civ. P. 21.[6]

---

[6] The Southern District of Mississippi district court's decision in *Burrell v. Ford Motor Co.*, 304 F. Supp. 2d 883 (S.D. Miss. 2004), is not inconsistent with New

## III.  The Amount-In-Controversy Requirement Is Satisfied.

19.    The amount-in-controversy in this matter exceeds the amount of $75,000, exclusive of interest and costs, in that:

---

GM's right of removal in this case.  Of course, that district court opinion, arising in the Fifth Circuit, is not binding here. *United States v. McGarity*, 669 F.3d 1218, 1266 n.66 (11th Cir. 2012) ("It is axiomatic that this Circuit is bound only by its own precedents and those of the Supreme Court . . . and certainly this is even more true in the context of a district court determination from another circuit."). But *Burrell* is also inapplicable and irrelevant given the fundamentally different allegations, facts, and governing procedural rule.  In *Burrell*, three plaintiffs brought product defect and personal injury claims against Ford and two dealerships arising from automobile accidents caused by allegedly defective ignition systems.  304 F. Supp. 2d at 886.  Ford sought to remove, arguing that the defendant dealerships were both fraudulently joined and fraudulently misjoined.  *Id*.  The district court rejected the argument in that case, holding that because the defendant dealerships not only repaired the vehicles but also *sold* them to plaintiffs, the claims were properly joined.  *Id*. at 888.  Here, in contrast, Thornton is not alleged to have had any involvement in the 2005 sale of the Chevrolet Cobalt to the Meltons.  In addition, and even more significantly, *Burrell* analyzed fraudulent misjoinder under Rule 20 of the Mississippi Rules of Civil Procedure, rather than the Federal Rules, while recognizing that "case law interpretations of Mississippi Rule 20 are far more liberal than case law interpretations of Federal Rule 20 in regard to joinder of plaintiffs and claims." *Id*. at 889.  Under *Tapscott*, of course, there can be no question that it is the Federal Rules that control the fraudulent misjoinder analysis here.  77 F.3d at 1360.  And even in the Fifth Circuit (including in Mississippi), courts there have continued to uphold removals premised on fraudulent misjoinder since *Burrell* was decided.  *See ¶* 10, *infra* (discussing *Willingham*, 2009 WL 2767679, at *4; *Milliet v. Liberty Mut. Ins. Co.*, No. 07-7443, 2008 WL 147821, at *3 (E.D. La. Jan. 11, 2008)).

a. Plaintiffs are seeking damages for "the full value" of Brooke Melton's life, her "physical pain and suffering," her "mental pain and suffering," and her "funeral and burial expenses." (Compl. ¶¶ 186-89.) Plaintiffs also are seeking compensation for her medical bills, attorney's fees, litigation costs, and punitive damages. (Compl. p. 53.)

b. Thus, although plaintiffs seek an unspecified amount of damages exceeding the Georgia state court's jurisdictional minimum, it is facially apparent from their complaint that the amount-in-controversy between plaintiffs and the defendants exceeds the sum or value of $75,000. *See, e.g., Williams v. Best Buy Co.*, 269 F.3d 1316, 1319 (11th Cir. 2001) (holding that, with regard to removal actions, "[w]hen the complaint does not claim a specific amount of damages, removal from state court is proper if it is facially apparent from the complaint that the amount in controversy exceeds the jurisdictional requirement"). Here, it is clear from the face of the complaint that plaintiffs' claimed damages, if proven,

would exceed $75,000.[7]  *See Purdiman v. Organon Pharm. USA, Inc.*, No. 2:08-CV-0006-RWS, 2008 WL 686996, at *2 (N.D. Ga. Mar. 12, 2008) ("in light of the Court's common sense and experience, the Court concludes that the amount of damages at issue in this action, including past medical bills, the cost of future medical treatment, pain and suffering, and lost wages, more likely than not exceeds $75,000"); *Gebbia v. Wal-Mart Stores, Inc.*, 233 F.3d 880, 883 (5th Cir. 2000) (affirming denial of motion to remand where Court concluded it was "facially apparent" that claims exceeded $75,000.00 in case alleging damages for, *inter alia*, "medical expenses, physical pain and suffering, mental anguish and suffering, loss of enjoyment of life, loss of wages, and earning capacity"); *Owners Ins. Co. v. Bryant*, No. 3:05-cv-0048-CAR, 2006 WL 50488, at *2-3 (M.D. Ga. Jan. 9, 2006) (considering "the usual cost of such services" to find amount-in-controversy met); *De Aguilar v. Boeing Co.,* 11 F.3d 55, 57 (5th

---

[7] Indeed, in the *Van Pelt* case filed in federal court by the same attorneys, plaintiffs pled an amount in controversy in excess of $75,000. (*Van Pelt* Compl. ¶ 9, 1:14-cv-01081-RWS, ECF No. 1.)  The absence of such an allegation here is further evidence in favor of fraudulent misjoinder.

Cir. 1993) (finding it facially apparent in wrongful death case that amount-in-controversy exceeded jurisdictional minimum); *Knickerbocker v. Chrysler Corp.,* 728 F. Supp. 460, 463 (E.D. Mich. 1990) (in a wrongful-death action, the amount-in-controversy clearly exceeds the jurisdictional requirement).

c. Plaintiffs also seek punitive damages, alleging that New GM "demonstrated an entire want of care, evidencing a reckless indifference and disregard to the consequences of their actions." (Compl. ¶¶ 177-180.)   Plaintiffs seek "an award of punitive damages sufficient to deter [New] GM and Thornton, and other similarly situated entities, from such conduct in the future."  (*Id.* ¶ 180.)  Punitive damages are included in determining the amount-in-controversy for federal jurisdiction.  *Holley Equip. Co. v. Credit Alliance Corp.*, 821 F.2d 1531, 1535 (11th Cir. 1987) ("When determining the jurisdictional amount in controversy in diversity cases, punitive damages must be considered. . . ."); *Swafford v. Transit Cas. Co.*, 486 F. Supp. 175, 177 (N.D. Ga. 1980) ("It is clear that in determining the jurisdictional amount in controversy, punitive damages are to be counted.").

20.    Therefore, all of the requirements for removal under 28 U.S.C. §§ 1332 and 1441 are met.  Because the controversy in this civil action is wholly between citizens of different states once the misjoined Thornton dealership is severed, and because the amount-in-controversy exceeds $75,000 based on the allegations contained in the Complaint, exclusive of interest and costs, New GM may remove this action pursuant to 28 U.S.C. §§ 1332 and 1441.

## THE OTHER REMOVAL PREREQUISITES HAVE BEEN SATISFIED

21.    As set forth below, the other prerequisites for removal under 28 U.S.C. § 1441 have been met.

22.    Copies of all process, pleadings, and orders served on or by defendants in this action are attached as Exhibit 6.

23.    This Notice of Removal is timely filed pursuant to 28 U.S.C. § 1446(b) in that it is being filed within thirty (30) days after the first receipt by New GM through service of the Complaint.  New GM was served on May 12, 2014.

24.    The only proper defendant, New GM, consents to the removal of this action.  *Jernigan v. Ashland Oil Inc.*, 989 F.2d 812, 815 (5th Cir. 1993) ("In cases involving alleged improper or fraudulent joinder of parties, however, application of this [consent] requirement to improperly or fraudulently joined parties would be nonsensical . . . there is no need to obtain the consent of the improperly or

fraudulently joined defendants. . . ."); *Pensyl v. Terminix Int'l Co. LP*, No. 5:09-CV-406 (CAR), 2010 WL 1487269, at *1 n.2 (M.D. Ga. Apr. 12, 2010) ("a defendant fraudulently joined to defeat removal need not join in or consent to removal").

25.    Pursuant to 28 U.S.C. § 1446(d), a copy of this Notice of Removal will be filed in the State Court of Cobb County, Georgia, and will be served upon plaintiffs through their counsel promptly after the filing of this Notice of Removal.

26.    By removing this Action to this Court, New GM does not waive any available defense.

27.    If any question arises as to the propriety of the removal of this action, defendant requests the opportunity to present a brief and oral argument in support of its position that this case is removable.

WHEREFORE, New GM respectfully requests that this action in the State Court of Cobb County, Georgia, be removed to this Court, and that no further proceedings be had in the Georgia state court.

[signature on following page]

DATED:  June 11, 2014          Respectfully submitted,


                               _s/Jeffrey A. Daxe_
                               Robert D. Ingram  (Bar No. 383405)
                               Jeffrey A. Daxe  (Bar No. 213701)
                               MOORE INGRAM JOHNSON & STEELE, LLP
                               326 Roswell Street
                               Marietta, GA  30060
                               Telephone:  (770) 429-1499
                               Facsimile:  (770) 429-8631
                               Email: ringram@mijs.com
                               Email: jad@mijs.com

                               Attorneys for Defendant
                               GENERAL MOTORS LLC

## <u>CERTIFICATE OF SERVICE</u>

I certify that on this 11th day of June, 2014, a true and correct copy of the foregoing **NOTICE OF REMOVAL** was served upon counsel of record by U.S. Postal Service First Class Mail, postage prepaid, as follows:

Lance A. Cooper (Bar No. 186100)
Patrick A. Dawson (Bar No. 005620)
THE COOPER FIRM
531 Roselane Street, Suite 200
Marietta, GA  30060
Telephone:  (770) 427-5588

*Attorneys for Plaintiffs*

Benjamin E. Baker, Jr. (Bar No. 032926)
Jere L. Beasley (*pro hac vice pending*)
J. Greg Allen (*pro hac vice pending*)
J. Cole Portis (*pro hac vice pending*)
BEASLEY, ALLEN, CROW, METHVIN, PORTIS & MILES, P.C.
218 Commerce Street
P.O. Box 4160
Montgomery, AL  36104
Telephone:  (334) 269-2034

*Attorneys for Plaintiffs*

Kenneth R. Bernard, Jr. (Bar No. 054844)
SHERROD & BERNARD, P.C.
8470 Price Avenue
P.O. Box 1154 (30133)
Douglasville, Georgia 30134
Telephone:  (770) 920-8350

*Attorneys for Plaintiffs*

Matthew P. Stone
Shawn N. Kalfus
FREEMAN MATHIS & GARY, LLP
100 Galleria Parkway, Ste. 1600
Atlanta, GA 30339

*Attorneys for Thornton Chevrolet, Inc.*

Dated:  June 11, 2014

By*:  s/Jeffrey A. Daxe*
      Jeffrey A. Daxe